UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ENIO R. RIVERA,
MICHAEL TALTON,

                                     Plaintiffs,

                                                              DECISION AND ORDER

                                                              07-CV-6483L

               v.

ROCHESTER GENESEE REGIONAL TRANSPORTATION
AUTHORITY,

                                     Defendant.
_____

       Plaintiffs Enio R. Rivera and Michael Talton (collectively "plaintiffs") commenced this action against their employer, defendant Rochester Genesee Regional Transportation Authority ("RGRTA") and several of its employees under 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL"), and the Family Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA"). Plaintiffs, who were employed (Talton as a fueler-washer and Rivera as a bus driver) by Lift Line, a subsidiary of RGRTA, purport to allege claims of workplace discrimination, harassment, and retaliation based on race and national origin. Talton also alleges causes of action for violations of, and retaliation under, the FMLA.

       The defendants have jointly moved for summary judgment dismissing the amended complaint in its entirety (Dkt. #48). Familiarity with the underlying facts and evidence submitted in support of, and in opposition to, that motion, is presumed.

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Although all inferences are to be construed in favor of the non-movant, he must present more than a "scintilla of evidence," *Belpasso v. Port Auth. of N.Y. & N.J.,* 2010 U.S. App. LEXIS 23662 at *2 (2d Cir. 2010), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on the allegations in his or her pleadings, "conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)..

Initially, I find that defendants are entitled to summary judgment on the plaintiffs' claims of hostile work environment discrimination based upon their respective African-American race and Hispanic ethnic origin.

It is well settled that in order to prevail on hostile work environment claim under Title VII, a plaintiff must demonstrate that his workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to his employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Nonetheless, "Title VII is not a general civility code," *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) (internal quotations omitted), and sporadic, isolated incidents of "boorish or offensive use of language" are insufficient to establish a hostile work environment. *Benette v. Cinemark U.S.A., Inc.*, 2003 U.S. Dist. LEXIS 22636 at *18 (W.D.N.Y. 2003). *See also Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (conduct must be severely threatening or humiliating to rise to the level of a hostile work environment); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

Here, neither plaintiff alleges a series of repeated, continuous, threatening or humiliating incidents sufficient to approach a hostile work environment. Rivera testified only that coworkers stared and/or smirked at him, swore, "harassed" him by using loud equipment in sufficient proximity that Rivera was startled and on one occasion had overspray from a paint gun drift onto him, suggested that Rivera be drug-tested after getting into a school bus accident, and called him a "fat fuck" at least once, "Taco Bell" at least five times, and "Spic" at least three times, over a period of at least five years. The bulk of Rivera's complaints concern a coworker who had married Rivera's ex-wife, and with whom he had an ongoing personal dispute concerning matrimonial and custody issues, a situation he concedes was wholly unrelated to his ethnic background.

For his part, Talton testified that his coworkers "stared" at him and gave him "evil looks," although he concedes he had not complained to Lift Line about this. Talton stated that he had complained to Lift Line about several racial epithets to which he had been subjected, both by coworkers intending to insult him, and those attempting to engage him in conversation using "faux ghetto-speak." Talton testified that he had been called a "nigger" approximately three times each by two different coworkers, was called a "fucking asshole" on one occasion, threatened by a coworker that he would "kick [Talton's] ass," once had a brick thrown at him and an epithet yelled by persons unknown while he was working in a wooded area behind Lift Line's bus "barn," and was accused by unspecified coworkers of creating a hostile work environment himself, which resulted in a meeting with Lift Line's Vice President of Para Transit and Regional Operations Debie Himmelsbach, who instructed him to treat his coworkers with more respect. Talton also claims that he was called "nigger," "boy" and "monkey" on other occasions, but was unable to recall the frequency, time period, or other details of these occurrences, nor is there any evidence that he complained to Lift Line about these alleged instances.

Taken together and granting all favorable inferences to plaintiffs, these allegations, which primarily concern isolated incidents of crude and offensive language taking place over a period of

several years, and highly subjective observations of coworkers "staring" at them, do not approach the level of an actionable hostile work environment.

The plaintiff's retaliation claims are equally unconvincing. Claims of retaliation pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). On a motion for summary judgment, a plaintiff must first establish a *prima facie* case of retaliation by showing: (1) his participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Once he has done so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

Here, neither plaintiff alleges any adverse employment action occurring prior to his initial engagement in protected activity (for Rivera, the filing of an administrative charge of discrimination on February 16, 2007, and for Talton, an incident report dated October 14, 2005, detailing offensive racial epithets used by a coworker who was thereafter terminated). Plaintiffs' claims of adverse employment actions rely upon the same facts related in support of their hostile work environment claims, which establish only sporadic and isolated offensive utterances by coworkers, many of which were never reported to management, as well as vague, conclusory allegations by Rivera that he was assigned "more work," and that he was disciplined for one or two incidents of insubordination (although he does not dispute Lift Line's stated, race-neutral rationale for the discipline). Because they cannot establish adverse employment actions, or a causal connection between those actions and their protected activity, plaintiffs' retaliation claims must be dismissed.

Finally, Talton has failed to put forth any evidence in support of his claim that Lift Line denied, interfered with, or retaliated against him for his exercise of FMLA rights, in connection with a period of leave in February 2007. It is undisputed that Talton never notified Lift Line that he required FMLA leave, and that to the extent Lift Line did not allow him to return to work thereafter,

- 4 -

he failed to complete and return the requisite medical certification form before returning to work. Talton contends that the bare fact that he used at least three consecutive personal, vacation and/or sick days should have placed his employer on sufficient notice that he was undergoing treatment for a medical condition and required FMLA leave. I disagree, and am equally unconvinced by Talton's argument that his failure to complete the medical certification form should have been excused, simply because he disagreed with Lift Line's judgment as to what type of medical specialist should be required to fill out the form. It is undisputed that the form was required by Lift Line's written policy concerning absences from work, and that Talton had received a copy of the policy, was aware of its requirements, and had, in fact, successfully used it to take an FMLA medical leave from Lift Line during the preceding year. Accordingly, Talton's speculative and largely incoherent FMLA claim(s) must be dismissed.

Having disposed of the plaintiffs' federal claims, to the extent that plaintiffs' claims under the NYHRL are not duplicative of those asserted under Title VII, which are dismissed for the reasons stated above, the Court declines to exercise jurisdiction over any remaining state law claims pursuant to 28 U.S.C. §1367(c). *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine [including judicial economy, convenience, fairness and comity] will point toward declining to exercise jurisdiction over the remaining state-law claims").

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #48) is granted in its entirety, and the amended complaint is hereby dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 26, 2011.