UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ENIO R. RIVERA and MICHAEL
TALTON,

                 Plaintiffs,

                                       Civ. No. 07-cv-06483

       v.

ROCHESTER-GENESEE REGIONAL
TRANSPORTATION AUTHORITY,

                 Defendant.

───────────────────────────────

**DEFENDANT ROCHESTER-GENESEE REGIONAL
TRANSPORTATION AUTHORITY'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO CONSOLIDATE AND SEPARATE TRIALS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42**

**HARRIS BEACH PLLC**

Scott D. Piper
Kyle W. Sturgess
*Attorneys for Defendant
  RGRTA*
99 Garnsey Road
Pittsford, New York 14534
(585) 419-8800
(585) 419-8817 (fax)
spiper@harrisbeach.com

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

POINT I      PLAINTIFF TALTON'S ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT FOR TRIAL TOGETHER PURSUANT TO FRCP 42 ........................................................2

POINT II     THE PLAINTIFFS' ACTIONS SHOULD BE SEVERED AND TRIED SEPARATELY IN ORDER TO PREVENT JURY CONFUSION AND PREJUDICE TO THE DEFENDANT OR TO ONE PLAINTIFF ........................................................8

     A.  The Factual Distinctions Between The Plaintiffs' Claims Merit Separate Trials ........................................................9

     B.  A Joint Trial Of The Plaintiffs' Claims Would Risk Prejudice To The Defendant And/Or Plaintiffs ........................................................11

CONCLUSION..................................................................................................... 18

i

# TABLE OF AUTHORITIES

Page

**Cases**

Amato v. City of Saratoga Springs, N.Y.,
   170 F.3d 311 (2d Cir. 1999).................................................................................. 8

Bailey v. Northern Trust Co.,
   196 F.R.D. 513 (N.D.Ill. 2000)........................................................................ 13, 16

Banks v. McHugh, 2012 WL 4715162 (D.Haw. Sep. 28, 2012)................................ 10

Barnhart v. Town of Parma, 252 F.R.D. 156 (W.D.N.Y. 2008)................................. 9

Borrero v. Rupert Housing Co.,
   2009 WL 1748060 (S.D.N.Y. June 19, 2009) ............................................... 5

Brophy v. Day & Zimmerman Hawthorne Corp.,
   2012 WL 870780 (D.Nev. Mar. 14, 2012) .................................................... 12

Caronia v. Husted Chevrolet,
   2009 WL 5216940 (E.D.N.Y. Dec. 29, 2009) ............................................... 5

Cestone v. General Cigar Holdings, Inc.,
   2002 WL 424654 (S.D.N.Y. Mar. 18, 2002) ...................................... 9, 13, 14, 16

Cramer v. Fedco Automotive Components Company, Inc.,
   2002 WL 1677694 (W.D.N.Y. July 18, 2002).................................................. 8

Cruz v. Robert Abbey, Inc., 778 F.Supp. 605 (E.D.N.Y. 1991)................................. 3

Davis v. Buffalo Psychiatric Center,
   1988 WL 47355 (W.D.N.Y. May 10, 1988).............................................. 4, 5

Endress v. Gentiva Health Services, Inc.,
   278 F.R.D. 78 (E.D.N.Y. 2011) ................................................................... 3

Epstein v. Kemper Insurance Companies,
   210 F.Supp.2d 308 (S.D.N.Y. 2002)............................................................ 9

Equal Employment Opportunity Commission v. Finish Line, Inc.,
   2013 WL 139528 (M.D.Tenn. Jan. 10, 2013)................................................ 12

Flintkote Co. v. Allis-Chambers Co., 73 F.R.D. 463 (S.D.N.Y. 1977) ...................... 3

Gerace v. Cliffstar Corp., 2009 WL 5052621 (W.D.N.Y. Dec. 15, 2009) ................................... 10

In re New York Community Bancorp., Inc., Securities Litigation,
    448 F.Supp.2d 466 (E.D.N.Y. 2006) ................................................................... 3

International Paving Systems v. Van-Tulco, Inc.,
    806 F.Supp. 17 (E.D.N.Y. 1992) ........................................................................ 3

Internet Law Library, Inc. v. Southridge Capital Management,
    208 F.R.D. 59 (S.D.N.Y. 2002) ...................................................................... 4, 7

Johnson v. Celotex Corp., 899 F.2d 1281 (2d Cir. 1990) .......................................... 3

Liegey v. Ellen Figg, Inc.,
    2003 WL 21688242 (S.D.N.Y. July 18, 2003) ................................................ 4, 5

Malcolm v. National Gypsum Co., 995 F.2d 346 (2d Cir. 1993) ................................. 2

McDowell v. Morgan Stanley & Co.,
    645 F.Supp.2d 690 (N.D.Ill. 2009) .................................................................. 12

Mlinaric v. Parker Hannafin Corp.,
    1988 WL 81681 (6th Cir. Aug. 5, 1988) ........................................................... 17

Moorhouse v. Boeing Co., 501 F.Supp. 390 (E.D.Pa. 1980) ................................... 13

Morris v. Northrup Grumman Corp.,
    37 F.Supp.2d 556 (E.D.N.Y. 1999) ....................................................... 9, 10, 16

Reynolds v. Barrett, 741 F.Supp.2d 416 (W.D.N.Y. 2010) ........................................ 2

Ropfogel v. Wise, 112 F.R.D. 414 (S.D.N.Y. 1986) ................................................. 12

Sidari v. Orleans County, 174 F.R.D. 275 (W.D.N.Y. 1996) ...................................... 9

Solvent Chemical Company, ICC Industries, Inc. v. E.I. DuPont
    Nemours & Co., 242 F.Supp.2d 196 (W.D.N.Y. 2002) ........................................ 3

Spaeth v. Michigan State University College of Law,
    845 F.Supp.2d 48 (D.D.C. 2012) ....................................................................... 5

Tardd v. Brookhaven National Laboratory,
    2007 WL 1423642 (E.D.N.Y. May 8, 2007) ........................................... 9, 12, 13, 16

Thompson v. Sanderson Farms, Inc.,
    2006 WL 2559852 (S.D.Ala. Sep. 1, 2006) .................................................................. 13, 15, 16

Todaro v. Siegel Fenchel & Peddy, P.C.,
    2008 WL 682596 (E.D.N.Y. Mar. 3, 2008) ................................................................. 9

United States v. Aquavella, 615 F.2d 12 (2d Cir. 1979) .................................................. 9

Watkins v. Hospitality Group Management, Inc.,
    2003 WL 22937710 (M.D.N.C. Dec. 1, 2003) ........................................................ 10, 13, 16

Weir v. Litton Bionetics, Inc.,
    1986 WL 11608 (D.Md. May 29, 1986) ..................................................................... 12

Werner v. Satterlee, Stevens, Burke & Burke,
    797 F.Supp. 1196 (S.D.N.Y. 1992) .......................................................................... 4

Williams v. County of Dakota,
    2012 WL 5844895 (D.Neb. Nov. 19, 2012) ............................................................. 4, 10

Wynn v. Nat'l Broad. Co., 234 F. Supp.2d 1067 (C.D.Cal. 2002) ................................. 10

**Statutes**

§1981 of the Civil Rights Act of 1870 ............................................................................ 1

42 U.S.C. §2000e .......................................................................................................... 1

N.Y. Exec. Law §290 ................................................................................................... 1

**Rules**

Fed.R.Civ.Proc. 42(a) .................................................................................................. 2

Fed.R.Civ.Proc. 42(b) .................................................................................................. 8

## PRELIMINARY STATEMENT

The Defendant, Rochester-Genesee Regional Transportation Authority ("RGRTA"; "Lift Line"; or the "Defendant"), by and through its attorneys, Harris Beach PLLC, hereby respectfully moves pursuant to Federal Rule of Civil Procedure 42 for an Order: (1) consolidating for trial the claims of Plaintiff Michael Talton ("Plaintiff Talton") in this action with a set of subsequent claims brought by Plaintiff Talton against RGRTA in a separate action presently pending in the United States District Court for the Western District of New York (Civ. No. 12-cv-6616)[1]; and/or (2) directing that all of Plaintiff Talton's claims be tried separately from those of his co-Plaintiff Enio Rivera ("Plaintiff Rivera"; collectively with Talton, the "Plaintiffs").

The basis for the Defendant's Motion is that (1) Plaintiff Talton's various claims—brought in both actions pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, the New York State Human Rights Law ("HRL"), N.Y. EXEC. LAW §290 *et seq.*, and §1981 of the Civil Rights Act of 1870 ("§1981")—involve such common questions of law and fact that their trial together would foster the disposition of *all* of Plaintiff Talton's numerous claims against this Defendant, permit analysis of patently similar legal claims premised on a foundation of common facts, and diminish the risk of inconsistent verdicts between Plaintiff Talton's two actions; and (2) as compared to one another, Plaintiff Talton's and Plaintiff Rivera's claims rely on such markedly different fact patterns and subtle differences in underlying legal theory, that the resolution of the two Plaintiffs' claims in one single action poses a significant risk of jury confusion, inconsistent verdicts, and consequently, prejudice to the

---

[1] For convenience in the analysis of Argument Point I, supra, which considers Plaintiff Talton's claims *alone*, Plaintiff Talton's claims in the instant action (Civ. No. 07-cv-06483) will be referred to in that Argument Point as "Talton I" while his subsequent action against RGRTA (Civ. No. 12-cv-6616) will be referred to as "Talton II."

Defendant (or even to one of the Plaintiffs).  The net result of the granting of both of the component requests in the Defendant's Motion would, furthermore, not be a waste of judicial resources or the resources of the parties themselves.

The facts and circumstances underlying the two actions at issue in this Motion are set forth at length in the Attorney Affirmation of Scott D. Piper, dated June 6, 2014; and the papers and Exhibits annexed thereto; and in the interest of brevity will not be repeated here at length.

## ARGUMENT

### POINT I

### PLAINTIFF TALTON'S ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT FOR TRIAL TOGETHER PURSUANT TO FRCP 42.

Plaintiff Talton's two actions—brought against the same Defendant, pursuant to the same statutory authorities and legal theories, and involving significant overlap in terms of the policies, company practices, and individuals involved in the alleged discriminatory harassment and/or retaliation—clearly present common questions of law and fact under circumstances in which their trial together would conserve judicial (and individual party) resources, and enhance the prospect of a consistent ultimate verdict.  Accordingly, the Court should consolidate these two actions.

Federal Rule of Civil Procedure 42 provides that where actions before a court "involve a common question of law or fact, the court may…consolidate the actions; or…issue any other orders to avoid unnecessary cost or delay."  FED.R.CIV.PROC. 42(a).  "'The trial court has broad discretion to determine whether consolidation is appropriate' under [FRCP 42]."  Reynolds v. Barrett, 741 F.Supp.2d 416, 446-47 (W.D.N.Y. 2010) (quoting Malcolm v. National Gypsum Co., 995 F.2d 346, 350 (2d Cir. 1993)); see also Johnson v. Celotex Corp., 899 F.2d 1281, 1284-

84 (2d Cir. 1990).   Indeed, the trial court need not wait for a motion, but may order the consolidation of related actions *sua sponte*, as it sees fit.   See In re New York Community Bancorp., Inc., Securities Litigation, 448 F.Supp.2d 466 (E.D.N.Y. 2006) and Endress v. Gentiva Health Services, Inc., 278 F.R.D. 78, 81 (E.D.N.Y. 2011).

In deciding whether to order consolidation of actions, courts must assess the interplay of a series of factors that implicate judicial economy; the convenience of the consolidation to the court and the parties; and the likelihood of factfinder confusion creating the risk of inconsistent verdicts.   A court should consider, for example, the "identity of the parties, the existence of common questions of law and fact, and the potential for creating confusion by combining multiple claims."   Solvent Chemical Company, ICC Industries, Inc. v. E.I. DuPont Nemours & Co., 242 F.Supp.2d 196, 221 (W.D.N.Y. 2002).   Additional decisions favoring consolidation have paid specific attention to whether the move would save judicial resources; see Endress, 278 F.R.D. at 82; whether the move might help the parties preserve their own resources; see Cruz v. Robert Abbey, Inc., 778 F.Supp. 605, 613 (E.D.N.Y. 1991) (consolidating an employee's actions against his employer and his employee union); and whether the move would increase or diminish the potential for inconsistent results: see International Paving Systems v. Van-Tulco, Inc., 806 F.Supp. 17, 22 (E.D.N.Y. 1992).   Ultimately, a court's "paramount concern" in addressing the propriety of consolidation is "for a fair and impartial trial."   Johnson, supra, 899 F.2d at 1284-85 (citing Flintkote Co. v. Allis-Chambers Co., 73 F.R.D. 463 (S.D.N.Y. 1977)).

The procedural stages of the actions at issue need not discourage a court from combining them, if those actions' factual and legal circumstances militate in favor of consolidation: courts have readily consolidated actions at different stages of litigation (short of cases at trial or immediately ready for trial).   See Internet Law Library, Inc. v. Southridge Capital Management,

208 F.R.D. 59, 62 (S.D.N.Y. 2002) (combining a case in which discovery had not yet commenced with one which had been in discovery for eight months); Werner v. Satterlee, Stevens, Burke & Burke, 797 F.Supp. 1196, 1212 (S.D.N.Y. 1992); Davis v. Buffalo Psychiatric Center, 1988 WL 47355, at *2 (W.D.N.Y. May 10, 1988) (consolidating actions although one discovery was nearly completed in one action, and discovery was only in its initial stages in the other, since no parties would be prejudiced by any delay this might cause).   Indeed, one court embraced consolidation of two hostile environment-type discrimination actions even though summary judgment was being briefed in the first action, while the second was still proceeding with discovery.  Liegey v. Ellen Figg, Inc., 2003 WL 21688242, at **1-2 (S.D.N.Y. July 18, 2003).

Plaintiff's Talton's claims in Talton II represent, in effect, the temporal continuance of his claims in Talton I: the same conceptual complaints (racial harassment and retaliation) extended to a longer timeline (Talton I covers the time period from roughly 2005 to 2007; Talton II features claims deriving from 2011-12), and ultimately culminating in the end of his employment with the Defendant.  Piper Aff. at ¶¶16-17, 22; Ex. B and G.  Since these claims implicate virtually every factor favoring consideration together, the Court should order them consolidated for trial.

In evaluating the suitability of discrimination claims for consolidation under the rubric of factors discussed above, courts have paid careful attention to issues such as whether the parties in the respective actions were the same; and whether the claims relied on the same legal theory. See Williams v. County of Dakota, 2012 WL 5844895, at *4 (D.Neb. Nov. 19, 2012) (rejecting consolidation of sexual harassment claims but observing that "actions involving the same parties are apt candidates for consolidation"); Liegey, supra, 2003 WL 21688242 at *1 (consolidating

4

hostile-environment claims where the claims were linked by, *inter alia*, a common legal standard applicable to both); but see Spaeth v. Michigan State University College of Law, 845 F.Supp.2d 48, 53-55 (D.D.C. 2012) (although claims filed against six law schools all relied on an age-discrimination theory, consolidation was inappropriate where each discrete event of non-hiring involved different decision-makers in different hiring processes, conducted at different times and in different locations) and Borrero v. Rupert Housing Co., 2009 WL 1748060, at fn.4 (S.D.N.Y. June 19, 2009) (consolidation of plaintiff's actions against his former employer and former union was not warranted, where the claim against the employer was premised on discrimination; and against the union, for failure of duty of representation).

In seeking common questions of fact, courts have examined the issues of when the claims arose (vis-à-vis one another); the presence or absence of relevant common policies, practices, harassers, supervisors, witnesses, positions, workplaces, and so forth.  See, e.g., Liegey, 2003 WL 21688242 at *1 (consolidating actions by female plaintiffs who both alleged lewd statements by the same supervisor, who allegedly retaliated against both plaintiffs when they complained); Davis, supra, 1988 WL 47355, at *1 (employee's race and sex claims against his employer, and failure-to-represent claims against his union, could be consolidated because they both revolved around two incidents with two presumably common sets of witnesses); and Caronia v. Husted Chevrolet, 2009 WL 5216940, at **3-5 (E.D.N.Y. Dec. 29, 2009) (claims all stemmed from same supervisor's harassment of female employee, and retaliation against three male employees for opposing the harassment of their female colleague).

Plaintiff Talton's claims present a clear case for consolidation based on these factors. The Plaintiff and Defendant in both actions are *absolutely identical*.  Moreover, not only are Talton I and Talton II brought pursuant to the *exact same case authority* (each featuring claims

for hostile-environment racial harassment and retaliation), but both spring from his employment in a single position (fueler-washer for Defendant RGRTA) within the same organizational chain of command (although his supervisors changed over time); operating at the same work station, and performing the same basic set of tasks; subject to the same organizational policies and practices (including those for the internal reporting and investigation of harassment claims). Piper Aff. at ¶¶11-12, 22-24; Ex. B and G.  The claims in Talton II, furthermore, involve Dominic Folino and Ryan Gallivan, both of whom also played alleged roles in the earlier claims. Indeed, Plaintiff Talton originally named Dominic Folino a Defendant in his first action, and now alleges that the racial harassment described in Talton II commenced with Folino's actions toward Talton at a November 2011 employee meeting.  Id. at Ex. G, ¶117.

Beyond this, the text of Plaintiff Talton's two Complaints reveals that the claims of Talton I and Talton II are inextricably intertwined, to the extent that the Talton II Complaint features *nearly 100 paragraphs* devoted to recounting the events of Talton I, many of the paragraphs drawn verbatim from the Talton I Complaint.  Piper Aff. at ¶¶22-24; Ex. G at ¶¶13-111.  Plaintiff Talton even expressly declares that the inclusion of sixteen pages' worth of recycled allegations is necessary to "demonstrate the context in which the claims of discrimination pled herein arose," a tacit admission that the events alleged in Talton II can— indeed, *should*—most appropriately be viewed by a fact-finder together with those of Talton I as a single narrative.  Id. at Ex. G, ¶¶12-14.  Plaintiff Talton gave further support to this position by naming a series of individuals for deposition who are identified as relevant *not* to the allegations of Talton II, but rather to the "contextual" allegations drawn straight from the Talton I action.  Id. at ¶27.  All of the foregoing reveals not only that the identity of the parties and "common questions of law and fact" factors are fully satisfied, but that a fact-finder—be it the Court or a

jury—would find it easier to render accurate and consistent verdicts (as between the Talton I and Talton II allegations) by having Plaintiff Talton's claims set forth before it and carefully examined as a single, complete story—rather than by permitting the claims to remain disjointed and hoping that accurate findings can be made in each instance based on an incomplete, half-account of Plaintiff Talton's tenure at RGRTA.  Id. at ¶28.  Moreover, the consolidation of the two actions would facilitate the mediation of Plaintiff Talton's claims together, increasing the possibility that a mediated resolution between Plaintiff Talton and RGRTA could be achieved in a single comprehensive agreement, rather than in piecemeal agreements spread between two different actions.  Id. at ¶¶25-26.

While the two actions are admittedly at different procedural stages—the discovery period in Talton II is still open, while discovery has ostensibly concluded in Talton I and the case is awaiting the scheduling of pretrial procedures—there is no reason to believe that any delay would significantly prejudice either Plaintiff Talton or RGRTA in the original action.  Indeed, it is entirely conceivable that discovery in Talton II could be *facilitated* by reference to discovery already conducted in the prior action:  see, e.g., Internet Law Library, 208 F.R.D. at 62-63 (reasoning that since some issues between consolidated actions were interrelated, the fact that discovery in the first action was so far advanced might permit the parties to speed up discovery on the remaining issues in the second, later action).  Talton I was already subject to several extensions of the discovery period for, *inter alia*, the taking of additional depositions, see Piper Aff. at ¶¶6-8, and the information gathered during those Talton I depositions may well help the parties agree on limitations on the scope of further discovery in Talton II: in short, making it possible to accelerate the process overall.

7

In sum, virtually all[2] of the factors involved in the Court's Rule 42(a) assessment militate strongly in favor of consolidation.  The Court should consequently exercise its broad power and join Talton I and Talton II into a single action, to be tried together.

### POINT II

### THE PLAINTIFFS' ACTIONS SHOULD BE SEVERED AND TRIED SEPARATELY IN ORDER TO PREVENT JURY CONFUSION AND PREJUDICE TO THE DEFENDANT OR TO ONE PLAINTIFF.

Compared to the well-aligned sets of claims that Plaintiff Talton has advanced in two separate actions, the claims of Plaintiff Talton and Plaintiff Rivera are highly disparate from one another.  Because they reflect more than enough factual and legal differences[3] to justify their severance from one another—and particularly because their trial together would otherwise pose significant risk of jury confusion and hence prejudice to the Defendant—it is respectfully submitted that the severance of each Plaintiffs' claims for a separate trial is appropriate in this instance.

As with its provisions regarding consolidation of cases, Rule 42 gives trial courts broad discretion in determining whether, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims."  FED.R.CIV.PROC. 42(b); see also Amato v. City of Saratoga Springs, N.Y., 170 F.3d 311, 316 (2d Cir. 1999); and Epstein v. Kemper Insurance

---

[2] The issue of judicial economy and impact of consolidation on the resources of the parties is discussed briefly in Argument Point II, infra, at fn. 4.

[3] As a preliminary matter it suffices to note that while a motion to sever may sometimes be regarded as premature where discovery has not yet been conducted—see Cramer v. Fedco Automotive Components Company, Inc., 2002 WL 1677694 (W.D.N.Y. July 18, 2002)—in this instance, discovery is complete and the extent of the differences between the Plaintiffs' respective cases is obvious.  Piper Aff. at ¶9.

Companies, 210 F.Supp.2d 308, 320 (S.D.N.Y. 2002).  In doing so, courts give consideration to

a series of factors, including

> (1) whether the claims arise out of the same transaction or
> occurrence; (2) whether the claims present some common
> questions of law or fact; (3) whether settlement of the claims or
> judicial economy would be facilitated; (4) whether prejudice would
> be avoided if severance were granted; and (5) whether different
> witnesses and documentary proof are required for the separate
> claims.

Todaro v. Siegel Fenchel & Peddy, P.C., 2008 WL 682596, at 2 (E.D.N.Y. Mar. 3, 2008)

(quoting Morris v. Northrup Grumman Corp., 37 F.Supp.2d 556, 580 (E.D.N.Y. 1999)).

Critically, "[s]everance requires the presence of only one of these conditions."  Cestone v.

General Cigar Holdings, Inc., 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002).

## A.     The Factual Distinctions Between The Plaintiffs' Claims Merit Separate Trials.

In applying the above factors to claims of workplace discrimination and retaliation,

courts have taken note of the fact that, even though "transaction or occurrence" is relatively

broadly interpreted—see Barnhart v. Town of Parma, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (the

"essential facts of the various claims are so logically connected that considerations of judicial

economy and fairness dictate that all the issues be resolved in one lawsuit") (quoting United

States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979))—the simple fact that two or more claims

may be premised on *similar* legal theories, or involve *some* factual overlap, does not settle the

issue.  Tardd v. Brookhaven National Laboratory, 2007 WL 1423642, at *11 (E.D.N.Y. May 8,

2007) (ordering separate trials for two plaintiffs' claims of racial discrimination) (citing Sidari v.

Orleans County, 174 F.R.D. 275, 282 (W.D.N.Y. 1996) (fact that defendants were common to

both cases and there was some overlap to relevant evidence, did not compel consolidation of

cases) and Watkins v. Hospitality Group Management, Inc., 2003 WL 22937710, at **11-12

(M.D.N.C. Dec. 1, 2003)).   In Watkins, for example, although the plaintiffs both alleged discrimination (race and age, respectively) against the same employer, both had been subjected to offensive comments by the same supervisor, and one plaintiff even alleged that she had been retaliated against for her support of the other's discrimination claim, the court did not find that this level of overlap prevented it from granting the defendant's motion for separate trials. Watkins, supra, 2003 WL 22937710, at **11-12.

Courts considering whether to order separate trials in discrimination cases involving multiple plaintiffs have frequently crafted their decisions around facts such as: the positions, titles, and duties of the plaintiffs; the proximity of their workplaces; the time frame of the alleged discrimination and any complaints made; and the identities of the supervisors and the alleged discriminators and/or harassers involved.   See, e.g., Morris, supra, 37 F.Supp.2d at 581; Williams, supra, 2012 WL 5844895, at *4; Banks v. McHugh, 2012 WL 4715162, at *9 (D.Haw. Sep. 28, 2012) (quoting Wynn v. Nat'l Broad. Co., 234 F. Supp.2d 1067, 1087 (C.D.Cal. 2002)); Gerace v. Cliffstar Corp., 2009 WL 5052621 (W.D.N.Y. Dec. 15, 2009).   Factual disparities in these areas can render individual plaintiffs' cases appropriate for severance.

There are considerable factual differences between the allegations of Plaintiff Talton and Plaintiff Rivera that merit the consideration of their claims in separate proceedings.   The Plaintiffs are united *almost solely* by the facts that they worked for the same Defendant and a handful of the harassing incidents they allegedly suffered (individually) were at the hands of several common individuals.   Otherwise, the Plaintiffs share *next to nothing* in common. Plaintiff Rivera was a bus driver who spent the vast majority of his time away from the workplace; Plaintiff Talton was a fueler-washer who spent the majority of his time working alone in a bus "barn" on RGRTA premises.   Piper Aff. at ¶11.   The two did not share a shift

10

(although at times their working hours overlapped); and no evidence in the record indicates that they worked side-by-side, or that any interaction between them at their job site was anything more than incidental and infrequent.  Id. at ¶¶11-12.  The two Plaintiffs were hired by different people and at different times (indeed, Plaintiff Rivera had been at RGRTA for nearly a decade by the time Plaintiff Talton was hired); and although there is overlap in the time frames of their complaints, Plaintiff Rivera's complaints began before Plaintiff Talton ever arrived at RGRTA.  Id. at ¶¶11-12 and Ex. B, G.  Notably, the two belonged to different organizational departments, and did not share a supervisor.  Id. at ¶¶11-13.  Indeed, Plaintiff Talton's supervisor John Tiberio—whose alleged behaviors absolutely dominate Plaintiff's Talton's laundry list of allegations relating to racial harassment and retaliation—is barely a bit character in Plaintiff Rivera's allegations; conversely, Plaintiff Rivera devotes extraordinary attention to RGRTA mechanic Dominic Folino as his alleged chief harasser, while Plaintiff Talton makes comparatively little mention of Folino (attributing approximately three racial slurs to Folino over the course of four years).  Id. at ¶¶13-17.  On the contextual facts alone, it is evident that the Plaintiffs' claims demand separate analysis.[4]

**B.     A Joint Trial Of The Plaintiffs' Claims Would Risk Prejudice To The Defendant And/Or Plaintiffs.**

Even where there is sufficient overlap for plaintiffs' cases to be deemed originating from a common "transaction or occurrence," jury confusion and prejudice may derive from a number of sources and render the cases ripe for severance.  Courts have pointed to the nature of the individual legal claims, and the facts underlying them, in deciding whether to sever cases.

---

[4] Underscoring this point: while briefing summary judgment in this case, the Defendant requested permission to exceed the Court's limitation on brief length (asking for 40 pages instead of the usual 25), in recognition of the fact that it was effectively seeking summary judgment in two cases that were joined only by virtue of common Defendants.  Piper Aff. at ¶10 and Ex. C.

Compare Tardd, supra, 2007 WL 1323642, at **10-11 (severing race discrimination claims when they were based on different theories: one a failure-to-promote claim, and the other a hostile environment claims) and Weir v. Litton Bionetics, Inc., 1986 WL 11608, at *6 (D.Md. May 29, 1986) (plaintiffs' discrimination claims, though both brought under the same theory of age discrimination, would be severed because the facts underlying their claims were different) with Equal Employment Opportunity Commission v. Finish Line, Inc., 2013 WL 139528, at *3 (M.D.Tenn. Jan. 10, 2013) (declining to sever plaintiffs' claims despite some "material differences," where both were based on sexual harassment).  The capacity of jurors to distinguish between different types of claims has played an important role in assessing the need for severance.  See Brophy v. Day & Zimmerman Hawthorne Corp., 2012 WL 870780, at *2 (D.Nev. Mar. 14, 2012) (declining to order separate trials for individual plaintiffs' claims because the jury was presumed capable of distinguishing different types of discrimination: race from gender).

Courts have also paid close attention to whether the factual circumstances underlying plaintiffs' various claims are potentially confusing to a jury.  In McDowell v. Morgan Stanley & Co., 645 F.Supp.2d 690 (N.D.Ill. 2009), the court severed the claims of four African-American Morgan Stanley employees who, though working in different branches from one another, alleged similar forms of racial discrimination.  The court observed that given the individualized nature of the plaintiffs' claims—occurring in, among other things, different locations and different contexts—"should these claims be tried together, before a single jury, the risk of confusion, prejudice, overlapping proof and duplicative testimony would be substantially increased."  McDowell, 645 F.Supp.2d at 695-96; see also Ropfogel v. Wise, 112 F.R.D. 414, 416 (S.D.N.Y. 1986) ("Substantial trial disruption would result from the necessity for continuous

instructions to the jury on the separate consideration of the voluminous prospective evidence as offered against only one party and not the other; this would require a feat of mental exclusion of insurmountable proportions on the part of a jury"); Thompson v. Sanderson Farms, Inc., 2006 WL 2559852, at **5-6 (S.D.Ala. Sep. 1, 2006) (ordering separate trials where the jury would be confused by the need to "keep separate each plaintiff's individualized discrimination claims, including their respective work histories, as well as their alleged damages and requests for relief").   The Thompson court concisely highlighted its concern with jury confusion in stating, "[S]eparate trials of each plaintiff is warranted as separate trial would spare the jury of the 'hopeless task of trying to discern who did what and said what to whom and for what reason'."   Thompson, supra, 2006 WL 2559852, at *5 (quoting Moorhouse v. Boeing Co., 501 F.Supp. 390, 392 (E.D.Pa. 1980)).

Thompson also highlights the fact that a likely outcome of that type of jury confusion is prejudice toward a defendant.  Thompson, 2006 WL 2259852, at *5 (collecting cases) (using anecdotal evidence offered by one plaintiff as a basis for finding in another plaintiff's favor "would…violate American jurisprudence"); see also Bailey v. Northern Trust Co., 196 F.R.D. 513, 518 (N.D.Ill. 2000) (danger of jury confusion in cases involving multiple plaintiffs is that "jury may simply resolve the confusion by considering all of the evidence to pertain to all the plaintiffs' claims"); Cestone, 2002 WL 424654, at *3; Watkins, 2003 WL 22937710, at *10; and Tardd, 2007 WL 1423642, at **11 ("Of particular concern to the Court is the potential prejudice to the defendants in [the first plaintiff's] case when the jury is presented with evidence of the 'KKK doll,' the 'noose' on [the second plaintiff's] door, and the use of racial slurs in [the second plaintiff's] presence").   The danger of prejudice is considered so significant, indeed, that one court has indicated it outweighs considerations of judicial economy.  Bailey, supra, 196 F.R.D.

at 518 ("The potential inconvenience and expense of separate trials do not outweigh…extreme prejudice to the defendant").[5]

In the face of these authorities it is clear that these Plaintiffs' claims—if tried together—would result in jury confusion and, consequently, a considerable risk of prejudice to the Defendant.   To begin with, although both the Plaintiffs bring harassment claims, Plaintiff Talton's are based upon his African-American *race*, while Plaintiff Rivera's are based on his Hispanic *ethnicity/national origin*.   Piper Aff. at ¶¶13-17.   This is *not* a distinction without a difference, as a layperson might see it: one of Rivera's alleged harassers, for example (Pat Barrett), is himself African-American, like Plaintiff Talton.   Id.   A jury in a single trial of these claims together, consequently, will be asked to parse out *racially*-hostile motivations from *ethnically*-hostile ones.   Moreover, Plaintiff Talton seeks to attribute a *retaliatory* (rather than *discriminatory*) motive to some of the alleged harassing behavior, adding a further layer of complexity for a jury trying to decipher precisely what prohibited motivations underlay the complained-of behaviors.   Id. at ¶¶16-17 and Ex. F (preserving Plaintiff Talton's retaliation claims while affirming the dismissal of Plaintiff Rivera's).

---

[5] The Defendant offers no argument as to how severance of the Plaintiffs' cases for trial may affect judicial economy, except to note that with the concerns over jury confusion (and the consequent need for repeated instructions) eliminated, the resulting two trials may prove to be more streamlined and efficient than a single proceeding, as one court has already suggested.   See Cestone, 2002 WL 424654, at *3 ("Two shorter trials will be more efficient and less expensive than one long, combined trial in which the Court must constantly caution the jury to not consider evidence that is irrelevant or inadmissible against a particular Defendant").   Moreover, the present circumstances *already* contemplate two trials anyway: one devoted to Plaintiff Talton's 2005-2007 claims along with all of Plaintiff Rivera's claims; and the other devoted to Plaintiff Talton's 2011-12 claims.   The Defendant submits that if Plaintiff Talton's claims were combined and severed from Plaintiff's Rivera's, the *net* result of severance would still be only two trials, but much better-focused, because each trial could concern itself solely with the claims of *one* Plaintiff, without the distractions and prejudices created by evidence offered in support of another Plaintiff's unrelated claims.

Beyond this, the factual context of the claims are highly individualized, as in <u>McDowell</u> and <u>Thompson</u>.  Plaintiff Rivera's claims revolve, in chief, around a personal conflict with Dominic Folino that began in or about 2003 or earlier (when Plaintiff Rivera's former wife left him for Folino), and tangentially involve several co-workers who Plaintiff Rivera alleged belonged to Folino's "clique": primarily mechanics John Stiggins and Pat Barrett.  Piper Aff. at ¶¶13-15.  Rivera's claims, moreover, take the form of alleged confrontational acts such as hostile stares and dangerous vehicular horseplay, and alleged acts of provocation such as stuffing garbage into Rivera's punchcard slot and posting a picture of Rivera's son's vehicle in the workplace.  <u>Id.</u> at ¶¶13-15 and Ex. B.  Very few of Plaintiff Rivera's allegations concern overtly ethnically-hostile behavior such as ethnic slurs.   By contrast, many of Plaintiff Talton's allegations entail the use of overtly racist slurs and behavior, such as being called a "nigger," "boy," and "monkey."   <u>Id.</u> at ¶¶15-17.   Those which do not, overwhelmingly focus upon disciplinary-type actions allegedly taken by John Tiberio—Plaintiff's Talton's immediate supervisor—such as reprimanding Plaintiff Talton; giving him excessive workloads; directing him to perform work in the "bus barn" that other co-workers were exempt from; and instructing him to wash the company vehicle.  <u>Id.</u> at ¶¶15-16.  (By contrast, Tiberio's workplace connection to Plaintiff Rivera was virtually nonexistent; and as noted above, Plaintiff Rivera's claims barely mention Tiberio at all.)  Plaintiff Talton's retaliation claims, similarly, focus in large part upon the alleged actions of Tiberio and RGRTA management.  <u>Id.</u> at ¶¶15-17.

The confusion that would likely accompany the presentation of these parallel narratives in a joint trial of the Plaintiffs' claims would greatly increase the risk that—despite marked differences in those claims—a jury would be inclined to "throw up its hands" and permit the racially inflammatory allegations of Plaintiff Talton to color their evaluation of Plaintiff Rivera's

claims, or to simplify the analytical process by fastening onto the fact of a few joint actors among the Plaintiffs' allegations, and use their evaluation of the evidence concerning those actors to make decisions concerning each Plaintiff's claims as a whole: put simply, exactly the sort of blanket assignation of liability envisioned and cautioned against by Thompson, Bailey, Cestone, Watkins and Tardd.  The potential for a "package deal" in the jury's decision-making process would prejudice RGRTA's chance to obtain fair and consistent verdicts, reached through careful consideration of each Plaintiff's claims in their own right.  This prejudice *strongly* militates in favor of separate trials.

Notably, however, the Defendant is not the *only* party that may be subject to prejudice or inconvenience by the failure to sever the Plaintiffs' respective claims for trial—at least one Plaintiff could be as well.  It is worth noting that the Second Circuit's decision implied that Plaintiff Rivera's claims were substantially *weaker* than those of Plaintiff Talton, conceding that his allegations "barely" rose above the threshold of a viable harassment complaint and that his claim amounted to—legally speaking—a "close call" for purposes of surviving summary judgment.   Piper Aff., Ex. F at 12.   Notwithstanding the considerable factual and legal differences between these claims, which have already been discussed above, the fact that the claims of two or more plaintiffs differ considerably in apparent *strength* has been cited as a basis to find potential prejudice to a party: see Morris, 37 F.Supp.2d at 581 (granting motion to sever racial-discrimination claims where one plaintiff's claims of systematic discrimination were "apparently more serious" than the other plaintiff's claims of an isolated incident of discrimination) ("The potential inferences or conclusions the jury may draw from the different claims and the strength of the respective cases could unfairly prejudice the defendants, *and perhaps one of the plaintiffs*") (emphasis added); see also Mlinaric v. Parker Hannifin Corp.,

1988 WL 81681, at *4 (6th Cir. Aug. 5, 1988) (affirming separate trials of each of a single plaintiff's claims of national origin and age discrimination, because of the difference between the strength of the respective claims).  In <u>Mlinaric</u>, the Sixth Circuit Court of Appeals observed that

> [T]he prejudice to plaintiff…was far outweighed by the likely prejudice to defendant in jointly trying the two claims.  The national origin claim under Title VII was a much stronger claim than the age discrimination claim and the district court did not abuse its discretion in concluding that the jury would confuse the evidence offered on each claim.  Moreover, all of the alleged incidents of name calling, burning, harassment, etc., were offered to support the national origin claim.  Hearing such evidence could have prejudiced the jury's consideration of the age discrimination claim.  The district court, in our view, adopted the least prejudicial approach in trying the two claims separately.

<u>Mlinaric</u>, 1988 WL 81681, at *4.

In keeping with the above guidance, while it is more likely that Plaintiff Rivera would benefit from the much more numerous and racially-incendiary allegations of Plaintiff Talton (as argued above), it is still also conceivable that Plaintiff Rivera could himself be the *victim* of prejudice—resulting from a jury's comparison of the relative strengths of the Plaintiffs' cases and a determination that, when compared with the case of Plaintiff Talton, Plaintiff Rivera's claims suffered so much by comparison that a jury could not find liability in his case.  Plaintiff Rivera, accordingly, would have been denied in such a scenario of an objective analysis of his claims and allegations in their own right, by virtue of the fact that he was "lumped together" with another Plaintiff whose claims and allegations overshadowed Rivera's own.  The mandate of <u>Johnson</u> that the paramount concern behind Rule 42 is for "fair and impartial trial" speaks to the equal need to avoid the potential for this particular prejudice—albeit affecting a plaintiff, rather than a defendant—as much as the prejudice to the Defendant discussed above.

17

**CONCLUSION**

In view of the foregoing, it is evident that the best method of achieving the "fair and impartial trial" that is the penultimate consideration of the Court in addressing multiple-plaintiff actions, is to realign the Plaintiffs' actions (Plaintiff Talton's two actions and Plaintiff Rivera's one) so that each Plaintiff's claims are tried separately, each by an undistracted jury that can focus on each man's case individually without confusion. The Court is, accordingly, respectfully urged to grant the Defendant's motions to (1) consolidate Plaintiff Talton's actions into a single proceeding; and (2) order that Plaintiff Talton's claims be tried separately from those of Plaintiff Talton; together with such other and further relief as the Court in its discretion may deem appropriate.

Dated: June 6, 2014
      Pittsford, New York

**HARRIS BEACH PLLC**

        s/ Scott D. Piper
Scott D. Piper
Kyle W. Sturgess
*Attorneys for Defendant*
  *RGRTA*
99 Garnsey Road
Pittsford, New York 14534
(585) 419-8800
(585) 419-8817 (fax)
spiper@harrisbeach.com